***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. AIG Claims Services is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. The issues for determination are:
 (a) Whether plaintiff sustained a disability due to a compensable injury by accident or as direct result of a specific traumatic incident which caused her thoracic outlet syndrome arising out of and in the course of her employment with employer-defendant on or about March 26, 1999?
(b) If so, to what benefits is plaintiff entitled?
5. The following stipulated exhibits were admitted into evidence:
(a) Stipulated Exhibit 1: Pre-Trial Agreement
(b) Stipulated Exhibit 2: Plaintiff's medical records
(c) Stipulated Exhibit 3: Industrial Commission forms
(d) Stipulated Exhibit 4: Plaintiff's Responses to Interrogatories
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty years old and possessed an eighth grade education.
2. Plaintiff began working for employer-defendant on September 15, 1997, and is currently employed by employer-defendant as a receptionist. On March 26, 1999, plaintiff worked as a compactor operator, running a machine that pre-shrinks cloth. Plaintiff's duties included lifting rolls of cloth and placing them in a box. The rolls of cloth that plaintiff lifted were normally dry and weighed forty-five to fifty pounds.
3. Plaintiff testified that on March 26, 1999, while she was operating the compactor, "[t]here was some trim that was still wet, so I had to lift it from the table into a dryer box. . . ." Plaintiff testified that she did not often work with wet cloth. The cloth was wet due to a problem in the manufacturing process, possibly resulting from there being a ". . . crease in the material when it goes in the dryer, or if [it goes] through the dryer too fast. . . ." The wet cloth weighed more than the dry cloth that plaintiff normally lifted. Lifting wet cloth was not part of plaintiff's usual work routine.
4. Plaintiff further testified that "right after" she had lifted the wet cloth, "I went on break. My back was stiff and it was hurting."
5. Plaintiff continued to work. Later the same day, plaintiff reported to her supervisor that she was experiencing back pain. She finished her work day and went home.
6. The next day, plaintiff was experiencing pain. She reported to work, but was in significant pain after several hours. Plaintiff reported the pain to her supervisor and requested that she be allowed to go to the emergency room. The employer-defendant filed a Form 19 that states "employee alleges as she was running her compactor/during day back began to ache." The Form 19 shows a date of injury of March 26, 1999 and states that the location of the injury was "strain upper back area (thoracic area)."
7. Plaintiff was given permission to leave work and proceeded to the emergency room. At the emergency room, plaintiff was treated with pain medication and physical therapy was recommended. Thereafter, plaintiff was also examined by the company doctor.
8. Plaintiff's workers' compensation claim was denied by Form 61 dated April 6, 1999.
9. On April 8, 1999, plaintiff saw Dr. Karen Hogan, her family physician. Dr. Hogan diagnosed plaintiff with myofascial pain of the thoracic back and posterior right shoulder. Dr. Hogan referred plaintiff to Dr. Samuel J. Oweida of Oweida Orthopaedic Associates.
10. On April 21, 1999, Dr. Oweida administered myofascial trigger point injections. Despite continued treatment with Dr. Owedia, plaintiff continued to suffer pain in the right periscapular region. On December 8, 1999, Dr. Owedia diagnosed plaintiff with thoracic outlet syndrome. Dr. Owedia recommended decompression of the right shoulder suprascapular nerve. He performed the surgery on February 4, 2000.
11. Upon referral by Dr. Oweida, plaintiff also began treating with Dr. Felix Evangelist, a specialist in thoracic surgery, on May 27, 1999. In his thirty years of medical practice in North Carolina, Dr. Evangelist has treated numerous patients for thoracic outlet syndrome. Dr. Evangelist concurred with Dr. Oweida's diagnosis of thoracic outlet syndrome, and stated in his deposition that the syndrome is attributed to a constriction of muscles located around the thoracic outlet, which spasm and squeeze the arteries and nerves running out to the arm, producing pain, numbness, tingling, and headaches. According to Dr. Evangelist, thoracic outlet syndrome is often precipitated by a minor injury, often to the back, chest, or shoulder. Following her surgery on February 4, 2000, plaintiff has continued to treat with Dr. Evangelist for pain symptoms associated with thoracic outlet syndrome.
12. Dr. Evangelist opined, to a reasonable degree of medical certainty, that the work related incident on March 26, 1999, caused thoracic outlet syndrome in the plaintiff.
13. Dr. Michael Andrew Cowan, a general neurosurgeon, examined plaintiff for an IME on August 29, 2001. Dr. Cowan opined that plaintiff's history and examination were most consistent with a back and shoulder strain. Although Dr. Cowan admittedly does not specialize in the treatment of thoracic outlet syndrome, the Full Commission finds his opinion regarding plaintiff's back strain to be credible and consistent with the opinions of Drs. Oweida and Evangelist.
14. The competent evidence of record establishes that plaintiff sustained an injury to her back as a consequence of a specific traumatic incident arising out of and in the course of her employment on March 26, 1999.
15. The greater weight of the competent medical evidence of record establishes that plaintiff suffers from thoracic outlet syndrome caused or aggravated by the specific traumatic incident at work on March 26, 1999.
16. The competent evidence of record establishes that plaintiff was temporarily totally disabled from April 6, 1999, to December 1, 1999, when she returned to light duty work as a receptionist. In addition, plaintiff was temporarily totally disabled due to her surgery from February 4, 2000, to March 14, 2000, when she again returned to light duty work as a receptionist. Plaintiff testified that she earns less money in the light duty job because she does not work overtime.
17. The competent evidence of record establishes that plaintiff's continued treatment with Dr. Evangelist is reasonably required to effect a cure, provide relief, or lessen the period of disability.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury as a result of a specific traumatic incident arising out of and in the course of her employment on March 26, 1999. N.C. Gen. Stat. § 97-2(6). The greater weight of the evidence of record establishes that such incident caused injury to plaintiff's back. A specific traumatic incident need not involve unusual conditions or a departure from plaintiff's normal work routine. See Lettley v. TrashRemoval Serv., 91 N.C. App. 625, 372 S.E.2d 747 (1988).
2. The greater weight of the evidence of record establishes a causal relationship between plaintiff's injury to her back on March 26, 1999, as a result of a specific traumatic incident, and her condition of thoracic outlet syndrome. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff is entitled to temporary total disability compensation from April 6, 1999, through and including December 1, 1999, and from February 4, 2000, through and including March 14, 2000. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to any temporary partial disability compensation owed while working light duty pursuant to N.C. Gen. Stat. § 97-30.
5. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including treatment by Dr. Felix Evangelist. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay temporary total disability compensation to plaintiff from April 6, 1999, through and including December 1, 1999, and from February 4, 2000, through and including March 14, 2000. Because this compensation has accrued, it shall be paid in a lump sum.
2. Subject to the attorney's fee approved below, defendants shall pay any past and future temporary partial disability compensation owing pursuant to N.C. Gen. Stat. § 97-30. As much of said compensation as has accrued shall be paid in a lump sum.
3. As plaintiff has not been evaluated for a permanent partial disability rating, this Opinion and Award does not address such issue. However, if the parties are unable to reach an agreement regarding this issue at a later date, either party may request a hearing from the Commission.
4. Defendants shall pay plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%), to be deducted from sums due plaintiff and paid directly to plaintiff's counsel in one lump sum of the accrued amount due plaintiff and thereafter, if periodic payments are made, by paying to plaintiff's counsel every fourth compensation check due plaintiff.
5. Defendants shall pay for medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including treatment by Dr. Felix Evangelist. Dr. Evangelist is HEREBY APPROVED as plaintiff's treating physician.
6. Defendants shall pay the costs due the Commission.
This 6th day of January, 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER